IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
IN NASHVILLE

| | |
|---|---|
| ERIC CHURCH )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JAMES ELLIS SMITH, KENNETH )<br>HARGROVE, JAMES B. SWEET, )<br>STEVEN WILLIAMS, VARIOUS )<br>JOHN DOES, VARIOUS JANE DOES, )<br>and VARIOUS XYZ CORPORATIONS, )<br>)<br>    Defendants. ) | Case No. _____<br><br>JUDGE _____<br><br>Magistrate Judge _____ |

## VERIFIED COMPLAINT

Plaintiff files this Verified Complaint against Defendants, James Ellis Smith, Kenneth Hargrove, James B. Sweet, Steven Williams, Various John Does, Various Jane Does, and Various XYZ Corporations (collectively "Defendants"), for trademark infringement and trademark dilution, in violation of the Trademark (Lanham) Act, 15 U.S.C. § 1051 *et seq.*, common law unfair competition, and violation of the Tennessee Personal Rights Protection Act of 1984, Tenn. Code Ann. § 47-25-1101 *et seq.*, and for his causes of action states as follows:

### PARTIES

1. Plaintiff Eric Church ("Plaintiff") resides in Davidson County, Tennessee.

2. Defendant James Ellis Smith is an individual believed to reside in New York.

3. Defendant Kenneth Hargrove is an individual believed to reside in New York.

4. Defendant James B. Sweet is an individual believed to reside in New York.

5. Defendant Steven Williams is an individual believed to reside in Pennsylvania.

6. Defendants Various John Does, Various Jane Does and Various XYZ Corporations ("Unnamed Defendants"), who are identified by fictitious names because their true names, capacities and addresses are not yet known to Plaintiff, are individuals and entities who are, in some manner, responsible or legally liable for the events giving rise to Plaintiff's claims. Plaintiff will seek leave of Court to amend this Complaint to assert the Unnamed Defendants' true names, capacities and addresses when Plaintiff is able to identify them.

## JURISDICTION

7. This Court has subject matter jurisdiction over this action pursuant to: 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121(a), as a civil action arising under the trademark laws of the United States; pursuant to 28 U.S.C. § 1338(b), as a civil action asserting a claim of unfair competition joined with a substantial and related claim under the trademark laws of the United States; and under 28 U.S.C. § 1367(a) and the doctrine of supplemental jurisdiction.

8. Defendants are subject to personal jurisdiction in the State of Tennessee, as Defendants have engaged in acts or omissions outside of Tennessee causing injury within Tennessee, and Defendants have been present in Tennessee and about this judicial district in connection with the claims asserted in this action.

## VENUE

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred and will occur in this judicial district, Defendants have caused and will continue to cause injury to Plaintiff in this judicial district, and Defendants are be subject to the jurisdiction of this Court.

## FACTS COMMON TO ALL COUNTS

10. Eric Church is an internationally-recognized recording and performing musical artist. In 2006, Church signed a recording contract with Capitol Records. On July 8, 2006, Plaintiff released his debut album *Sinners Like Me*, which produced four singles on the *Billboard* country chart. On March 24, 2009, Plaintiff released his second album, *Carolina*, which was certified by the RIAA as gold with sales in excess of 500,000 copies and two top 10 singles. Plaintiff's 2011 album *Chief* debuted at number one on both the Top Country Albums and the *Billboard* 200 with sales in excess of 145,000 copies in the first week. *Chief* was nominated for the 2012 Grammy Awards for Best Country Album and produced the number one single "Drink in My Hand."

11. Plaintiff is also a highly-recognized and popular touring artist. Plaintiff has been performing live since approximately 1995. After signing with Capitol Records in 2006, Plaintiff has toured regularly in support of the albums released by Capitol. In November of 2011, Plaintiff announced his first concert tour as a headliner titled, "The Blood, Sweat & Beers" ("The Blood, Sweat & Beers Tour"). By the end of 2012, The Blood, Sweat & Beers Tour will have played 90 cities in 38 states, including Nashville.

12. The Blood, Sweat & Beers Tour began on January 19, 2012 with a sold-out show in Fort Smith, Arkansas. The performances have drawn capacity audiences at most venues played thus far.

13. The Blood, Sweat & Beers Tour is expected to draw an audience of approximately 500,000 attendees.

14. In addition to The Blood, Sweat & Beers Tour, Plaintiff will perform live during 2012 at certain fairs and festivals. A complete current schedule of the Plaintiff's performances during 2012 ("Plaintiff's 2012 Tour") is attached to this Complaint as **Exhibit A**.

15. In conjunction with his live performances to date during 2012, as well as during his prior tours with Jason Aldean and Bob Seger, Plaintiff has sold, through authorized vendors, merchandise bearing his trademarks, name and likeness.

16. Plaintiff has advertised and sold such merchandise for more than 6 years.

17. Plaintiff's genuine and authorized merchandise prominently displays the trademark, ERIC CHURCH in word form, and/or the trademark CHIEF ("Plaintiff's Trademarks"), and/or Plaintiff's photograph, image or likeness (collectively "Eric Church Merchandise").

18. Plaintiff has sold and will sell Eric Church Merchandise at the concert venues during Plaintiff's 2012 performances.

19. Plaintiff's merchandise includes hats, bandanas, koozies, dog tags, sun glasses, key chains, posters, and books and most prominently, t-shirts. Digital photographs of select examples of Eric Church Merchandise are attached to this Complaint as **Exhibit B**.

20. ERIC CHURCH is Plaintiff's personal name, and Plaintiff is also the owner of the common law trademark for the mark ERIC CHURCH, in connection with: (a) series of musical sound recordings; pre-recorded audio cassettes, compact discs, and DVD's and video tapes featuring performances by an individual; (b) clothing, namely, shirts, T-shirts, sweatshirts, jerseys, hats and caps; and (c) entertainment services in the nature of the rendition of live musical performances by an individual. True and correct copies of materials demonstrating this use are attached to this Complaint as **Exhibit C**.

4

21. Plaintiff first made use of the mark ERIC CHURCH in connection with his live performances in 1995 and used his mark, name and likeness continuously since that time.

22. Plaintiff also uses the mark ERIC CHURCH and his likeness to sell merchandise and recorded product through his website, www.ericchurch.com. Screen shots of Plaintiff's website are attached as **Exhibit D**.

23. Through Plaintiff's continuous and extensive use of the mark ERIC CHURCH, this mark has become highly distinctive and famous, identifying Plaintiff to the public as the genuine sources of Plaintiff's goods and services.

24. These goods – ERIC CHURCH Merchandise – are of the highest quality and grade, manufactured according to strict quality and aesthetic standards.

25. Plaintiff's licensees are also required to manufacture ERIC CHURCH Merchandise consistent with these standards and are required to obtain prior approval of all licensed products.

26. Plaintiff has undertaken and continues to undertake diligent efforts to prevent, and actively pursue, sale of merchandise marked with imitations of Plaintiff's Trademarks ("Infringing Goods").

27. Plaintiff's representatives have identified Infringing Goods near the venues where Plaintiff is performing during Plaintiff's 2012 Tour.

28. At Plaintiff's past live concert performances at various concert tour locations throughout the United States and, most recently, Plaintiff's performances during Plaintiff's 2012 Tour, Plaintiff's representatives have encountered numerous individuals selling Infringing Goods.

5

Case 3:12-cv-00263   Document 1   Filed 03/13/12   Page 5 of 15 PageID #: 5

29. The named Defendants, James Ellis Smith, Kenneth Hargrove and James B. Sweet, were cited by University of Tennessee Police for selling infringing merchandise during Plaintiff's performance in Knoxville on February 3, 2012. Plaintiff alleges on information belief that the named Defendants have also sold such merchandise at numerous of Plaintiff's performances including, without limitation, Fort Smith, Arkansas and Norfolk, Virginia.

30. Named Defendant Williams was apprehended by the Battle Creek, Michigan Police for disrupting attendees and selling Infringing Goods during Plaintiff's February 23, 2012 show. Plaintiff alleges on information and belief that Williams has also sold such merchandise at numerous of Plaintiff's prior 2012 performances, including, without limitation, Indiana, Pennsylvania.

31. In addition to the named Defendants, there were numerous individuals distributing, selling and offering for sale Infringing Goods at these concert venues who refused to furnish identification to Plaintiff's representatives and otherwise evaded Plaintiff's anti-infringement enforcement efforts. These individuals and other similarly-situated individuals and entities, whose true names, capacities and addresses are not yet known to Plaintiff, are identified in this Complaint as Various John Does, Various Jane Does and Various XYZ Corporations.

32. Defendants have and will manufacture, distribute, advertise or sell Infringing Goods in connection with Plaintiff's 2012 Tour.

33. Plaintiff has not authorized any Defendants to manufacture, distribute, advertise or sell any Infringing Goods.

34. Based upon Plaintiff's past experience, the design, materials and quality of most Infringing Goods sold by Defendants are of inferior quality, fail to comply with the quality and style standards established by Plaintiff for ERIC CHURCH Merchandise, and are lower in price

than authentic ERIC CHURCH Merchandise. Photographs of samples of the infringing goods are attached as **Exhibit E**.

35. Further, Infringing Goods are largely uniform from concert to concert and city to city, as many Defendants sell the same Infringing Goods in different cities, travelling from one concert venue to the next. During Plaintiff's past live performances, Plaintiff's representatives have often observed the same people selling Infringing Goods at different concert locations.

36. Infringing Goods, while inferior in quality, are of the same general nature and type as genuine and authorized ERIC CHURCH Merchandise. Defendants' use of Plaintiff's Trademarks, name and likeness causes confusion among consumers and deceives consumers into believing that Infringing Goods are associated with, or sponsored or endorsed by Plaintiff. The consumers are also deceived into believing that they are purchasing genuine or authorized ERIC CHURCH Merchandise.

37. In addition, Infringing Goods often include or feature Plaintiff's image, photographs, name and likeness.

38. Plaintiff believes and avers that Defendants will continue to manufacture, distribute, advertise and sell Infringing Goods in connection with Plaintiff's 2012 Tour throughout the United States.

39. In addition to causing Plaintiff irrecoverable and innumerable lost sales, Defendants' actions will irreparably injure Plaintiff's reputation for high-quality products, and will cause dilution of the ERIC CHURCH trademark by blurring and by tarnishment.

40. Law enforcement officers at concert venues are primarily dedicated to on-site safety and security and typically do not have priority or time to deal with Infringing Goods.

7

Case 3:12-cv-00263   Document 1   Filed 03/13/12   Page 7 of 15 PageID #: 7

41. When Defendants are approached by Plaintiff's representatives, they either quickly hide or discard Infringing Goods and walk or run away. They also ignore requests for identification and to leave the concert premises. Notwithstanding Plaintiff's efforts, Defendants continue to sell Infringing Goods at concert venues.

42. Plaintiff has determined there are more sellers of Infringing Goods at the concert locations than Plaintiff can address absent an Injunction and an Order authorizing the law enforcement officers and/or persons acting under their supervision to seize and impound Infringing Goods, because in the absence of such an order, Defendants will not voluntarily turn over Infringing Goods and will not cease the distribution and sale of Infringing Goods. Further, because Defendants will not identify themselves, Defendants will be able to avoid responding to an ordinary civil lawsuit and, in this way, will be essentially immune from an injunction and monetary liability.

43. For these reasons, the only effective means of protecting Plaintiff's Trademarks from Defendants' infringement and dilution during Plaintiff's 2012 Tour is by authority to seize Infringing Goods, through the *ex parte* seizure process.

44. Without the aid of a federal court order authorizing seizure of Infringing Goods at and near Plaintiff's 2012 Tour concert locations, Plaintiff will lose innumerable and irrecoverable sums in merchandise sales and will suffer incalculable, irreparable damage to his reputation and goodwill, in addition to the harm such infringement will cause to the consuming public by deceiving the public into believing that Infringing Goods are the legitimate, high-quality ERIC CHURCH Merchandise; Plaintiff will be unable to combat the network of individuals distributing and selling Infringing Goods in connection with Plaintiff's 2012 Tour,

and will be unable to protect his rights and the rights of the consuming public against the distribution and sale of Infringing Goods at Plaintiff's 2012 Tour concerts.

45. Upon information and belief, Defendants have and will continue to engage in the manufacture, distribution, marketing and sale of Infringing Goods, in this State and elsewhere in interstate commerce, and will continue these activities during Plaintiff's 2012 Tour.

## COUNT I

## INFRINGEMENT OF UNREGISTERED TRADEMARK

## (15 U.S.C. § 1125(a))

46. Defendants' use of copies or simulations of Plaintiff's Trademarks, or any confusingly-similar marks, words and designs, on Infringing Goods constitutes infringement of Plaintiff's unregistered trademarks in violation of 15 U.S.C. § 1125(a).

47. Defendants' conduct is malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

48. Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable harm and monetary damage.

49. Plaintiff is entitled to an injunction enjoining Defendants from any further use in commerce of Plaintiff's Trademarks, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, Plaintiff's reasonable attorney's fees, and three times Plaintiff's actual damages, and to an order for destruction of Infringing Goods, pursuant to 15 U.S.C. §§ 1116(a), 1117(a) and 1118.

## COUNT II

## FEDERAL TRADEMARK DILUTION

## (15 U.S.C. § 1125(c))

50. Defendants' use of copies or simulations of the mark ERIC CHURCH, or any confusingly-similar marks, words and designs, on Infringing Goods constitutes dilution by blurring that impairs the distinctiveness of this famous mark and dilution by tarnishment, and harms the reputation of this mark, in violation of 15 U.S.C. § 1125(c).

51. Defendants' conduct is malicious, fraudulent, deliberate, willful, intentional and in disregard of Plaintiff's rights.

52. Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable harm and monetary damage.

53. Plaintiff is entitled to an injunction enjoining Defendants from any further acts of dilution of the mark ERIC CHURCH, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, Plaintiff's reasonable attorney's fees, and three times Plaintiff's actual damages, and to an order for destruction of Infringing Goods, pursuant to 15 U.S.C. §§ 1116(a), 1117(a), 1118 and 1125(c)(1).

## COUNT III

## COMMON LAW UNFAIR COMPETITION

54. Defendants have prominently used Plaintiff's Trademarks in connection with their unlawful efforts to sell competing products as legitimate goods of Plaintiff. Defendants' use of Plaintiff's Trademarks for competing goods is likely to confuse the public as to the origin, source, sponsorship or quality of goods offered for sale by Defendants and is likely to mislead

10

persons to believe that Defendants' businesses and goods have been sponsored, approved or licensed by Plaintiff or are in some way affiliated or connected with Plaintiff.

55. Defendants' use of Plaintiff's Trademarks is with full knowledge of the substantial reputation and goodwill associated with Plaintiff and Plaintiff's Trademarks, and with full knowledge that Defendants have no rights to such marks. By appropriating the goodwill of Plaintiff is widely known and respected trademarks, Defendants have unjustly enriched themselves and damaged Plaintiff.

56. Defendants' conduct is in willful disregard of Plaintiff's rights.

57. Defendants' conduct will injure Plaintiff and, unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable harm and monetary damage.

58. Plaintiff is entitled to an injunction enjoining Defendants from any further acts of Defendants' use of Plaintiff's Trademarks, to an award of all Defendants' profits, damages sustained by Plaintiff, the costs of this action, and Plaintiff's reasonable attorney's fees.

## COUNT IV

## VIOLATION OF TENNESSEE PERSONAL RIGHTS PROTECTION ACT OF 1984

### (TENN. CODE ANN. § 47-25-1101 *ET SEQ.*)

59. Defendants have knowingly used and infringed upon the use of Plaintiff's name, photograph and likeness, as items of commerce for purposes of advertising products, merchandise, and goods. Defendants have engaged in this conduct without Plaintiff's consent or authorization.

60. Defendants' actions and omissions violate the Tennessee Personal Rights Protection Act of 1984, Tenn. Code Ann. § 47-25-1101 *et seq.*, including, without limitation, Tenn. Code Ann. § 47-18-1105.

61. Plaintiff has been damaged by Defendants' violations of the Tennessee Personal Rights Protection Act.

62. Plaintiff is entitled to an injunction preventing and restraining Defendants' unauthorized use of Plaintiff's name, photograph or likeness, to an order impounding all materials made or used in violation of Plaintiff's rights, and enjoining the use of all plates, molds, matrices or other articles by means of which such materials may be reproduced, and to an order of the destruction or other reasonable disposition of all such materials.

63. Defendants' use of Plaintiff's name, photograph or likeness was a willful or knowing violation of the Tennessee Personal Rights Protection Act, entitling Plaintiff to an award of his actual damages and any profits attributable to Defendants' infringement on his personal rights, together with all other remedies afforded by the Act and, pursuant to Tenn. Code Ann. § 47-25-1106(a), in addition to any other damages awarded by this Court.

## JURY DEMAND

64. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

Plaintiff requests the following relief:

1. A judgment against Defendants for compensatory and punitive damages;

2. A judgment against Defendants for three times Plaintiff's actual damages under the Lanham Act, 15 U.S.C. § 1117(a);

3. The entry of a temporary restraining order, and preliminary and permanent injunctions, prohibiting Defendants, their agents, employees, officers, attorneys, successors and assigns and all persons acting on their behalf from: (a) any further use of Plaintiff's Trademarks, name, image or likeness; (b) manufacturing, distributing, marketing or selling any Infringing

Goods, or any ERIC CHURCH MERCHANDISE bearing, without authorization, Plaintiff's Trademarks or any confusingly-similar marks, words, names or designs, or any photograph, image or likeness of Plaintiff; and (c) representing that any Infringing Goods are sponsored, endorsed or authorized by Plaintiff

4. Order that all Infringing Goods, or any other merchandise or products bearing without authorization Plaintiff's Trademarks or any confusingly-similar marks, Plaintiff's name, photograph, image or likeness, found in the possession, custody or control of Defendants within a ten-mile vicinity of all concert venues at which Plaintiff will be performing during Plaintiff's 2012 Tour, during and within twenty-four hours of the performance, be seized until a hearing can be held before this Court to determine the disposition of any goods so seized;

5. Order that any and all means of making Infringing Goods and any and all records documenting the manufacture, sale, or receipt of things involved in the sale, offering for sale, or distribution of Infringing Goods, be seized until a hearing can be held before this Court to determine the disposition of any goods so seized;

6. Order that (a) all Infringing Goods, or any other merchandise or products bearing, without authorization, Plaintiff's Trademarks or any confusingly-similar marks, or Plaintiff's name, photograph, image or likeness, and all plates, molds, matrices, and other means or articles of making or reproducing the same, found in the possession, custody, or control of Defendants, and (b) any goods seized pursuant to this Court's order, be delivered to Plaintiff, or Plaintiff's attorneys, pending the outcome of this action;

7. Order that all goods seized pursuant to this Court's orders be destroyed;

8. Award Plaintiff his attorneys' fees, costs and expenses under the Lanham Act, 15 U.S.C. § 1117(a);

9. Pre-judgment interest; and

10. Such other and further general, injunctive and equitable relief as may be appropriate under the circumstances.

_____
John R. Jacobson, #14365
Chris Vlahos, #20318
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
jjacobson@rwjplc.com
cvlahos@rwjplc.com

Attorneys for Plaintiff Eric Church

# VERIFICATION

STATE OF Tennessee )

COUNTY OF Davidson )

I state that the facts asserted are true and accurate to the best of my knowledge, information and belief.

_____
Charly Salvatore

Sworn to and subscribed before me on this the 12th day of March, 2012.

_____
NOTARY PUBLIC

*[Notary Seal: DOROTHY GIBBY, STATE OF TENNESSEE NOTARY PUBLIC, DAVIDSON COUNTY, TENN.]*

My Commission Expires SEPT. 3, 2012

15